UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENNAKER COMPANY CONSULTING, INC., <br><br> Plaintiff, <br><br> -against- <br><br> TLM GROUP, LLC, TLM MISSION CRITICAL, LTD., MICHAEL CARRON, LESLIE DUNKLEY, and TONY OSBORN, <br><br> Defendants. | Civil Action No. : <br> ECF Case <br><br><br><br><br><br> **COMPLAINT** |

Plaintiff, Rennaker Company Consulting, Inc. ("RCCI"), by its attorneys, Peckar & Abramson, P.C., as and for its Complaint in the above-referenced action against Defendants TLM Group, LLC ("TLM"), TLM Mission Critical, LTD ("TLM MCL"), Michael Carron ("Carron"), Leslie Dunkley ("Dunkley") and Tony Osborn ("Osborn" and, with TLM, TLM MCL, Carron and Dunkley, collectively "Defendants"), states as follows:

**PRELIMINARY STATEMENT**

1.      This action arises from a business dispute between RCCI and Defendants stemming from that certain Membership Interest Purchase Agreement, effective July 1, 2015 (the "MIPA"), by and between RCCI and Defendants wherein RCCI was granted valuable ownership rights in TLM and TLM MCL in exchange for RCCI's assignment of certain valuable construction contracts for the construction of data centers in the United States and in Europe (the "Assigned Contracts") by TLM and/or TLM MCL.

2. After RCCI assigned the Assigned Contracts pursuant to the MIPA, Defendants went to work to strip RCCI of any benefit thereunder by refusing to honor the agreement, repudiating the agreement, and diverting monies to themselves in the process.

3. RCCI opted to validly terminate the MIPA pursuant to an April 14, 2016 notice of termination providing a sixty (60) day notice of termination.

4. Despite RCCI's lawful termination of the MIPA and despite Defendants' receipt and enjoyment of the Assigned Contracts, Defendants not only refused to pay RCCI just compensation for the Assigned Contracts pursuant to the express terms of the MIPA, but repudiated their obligations and then served an invalid "notice of termination" purporting to terminate the MIPA for invalid reasons and without notice or opportunity to cure.

5. In this Complaint, RCCI seeks, *inter alia*, to recover the compensation rightfully owed to it, along with the reimbursement of expenses it advanced to generate TLM business; an accounting from Defendants in order to determine RCCI's vested membership interest in TLM and TLM MCL; and a repurchase of RCCI's membership interest in accordance with the MIPA.

6. RCCI seeks specific performance of the MIPA. RCCI also seeks damages for breach of the MIPA and the implied covenant of good faith and fair dealing, and for breaches of fiduciary duty by Defendants.

## JURISDICTION

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

## VENUE

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because TLM has its principal place of business in New York County, New York and because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## THE PARTIES

9. Plaintiff, RCCI, is a validly formed and operating North Carolina corporation with a principal place of business located at 2408 Cross Country Road, Charlotte, North Carolina 28270.

10. Defendant TLM is a limited liability company organized and existing under the laws of the State of New York, and having its principal place of business located at 450 7th Ave, Suite 2104, New York, New York 10123.

11. Upon information and belief, Defendant TLM MCL, is a foreign corporation organized and existing under the laws of Ireland with a principal place of business located at 3rd Floor, Quayside Business Park, Mill Street, Dundalk Co Louth, 221202.  TLM MCL is an affiliated entity of TLM, has common ownership, directed tortious activity toward this District and/or engaged in such tortious activity in this District by and through its agents, and engaged in commerce within the State of New York as set forth below.

12. Upon information and belief, Defendant, Carron, is an individual who resides in State of New York and is a member of TLM and TLM MCL.  Carron is a necessary and interested party since he is a member of TLM and TLM MCL and his interests are affected by the relief sought herein.

13. Upon information and belief, Defendant, Dunkley, is an individual who resides in the State of New York, and is a member of TLM and TLM MCL. Dunkley is a

LAW OFFICES
Peckar & Abramson
A Professional Corporation

3

necessary and interested party since he is a member of TLM and TLM MCL and his interests are affected by the relief sought herein.

14. Upon information and belief, Defendant Osborn is an individual who resides in the State of New Jersey and is a member of TLM and TLM MCL. Osborn is a necessary and interested party since he is a member of TLM and TLM MCL and his interests are affected by the relief sought herein.

## FACTS COMMON TO ALL COUNTS

15. RCCI was formed in 2013. Terry Rennaker ("Rennaker") is the President of RCCI.

16. RCCI has historically provided owner representation and project management services for the construction of data centers for large companies throughout the United States and abroad.

17. Through the hard work and determination of its employees, RCCI built a profitable business relationship with Facebook, Inc. ("Facebook") and several of Facebook's affiliates and subsidiaries, to build data centers in the continental United States, Ireland and Europe.

18. In 2015, and in reaction to industry pressures, Facebook worked to eliminate vendors who were wholly reliant on it for work and to diversify in order to avoid risk of a finding that the vendors qualified as employees of the company rather than independent contractors.

19. Facebook requested that RCCI diversify such that Facebook was not its sole client or merge with another entity with diversified customers to satisfy this new requirement.

20.     Rennaker then approached TLM and its members, whom Rennaker had met through previous business ventures, with the idea of a merger.

21.     Defendants Carron, Dunkley and Osborn were and are members of TLM. TLM provides owner representation and project management services to clients in the United States and abroad.

22.     The prospect of obtaining RCCI's valuable Facebook contracts was of great interest to Defendants as it would serve to double both the volume and profits TLM was then earning.

A.     **TLM Agrees to Grant RCCI a Member Interest in TLM and TLM MCL in Exchange for RCCI's Delivery of The Assigned Contracts.**

23.     On or about July 15, 2015, the parties entered into the MIPA whereby, in exchange for RCCI's delivery of the Assigned Contracts to TLM and/or TLM MCL (depending on the locale for performance of the work), RCCI would ultimately receive a 25% membership interest in TLM and TLM MCL.

24.     Pursuant to the Agreement, the membership interest was to accrue during the "Vesting Period," which is defined in Section 1(i) of the Agreement as follows:

> "Vesting Period: A period of time not to exceed twenty-four (24) months from the Effective Date [July 1, 2015], beginning on the Effective Date and ending on the earlier of June 30, 2017 or the date on which the Gross Profit from the Contracts reaches the Full Vesting Amount."

25.     According to Section 1(d) of the Agreement, the "Full Vesting Amount" is Two Million, Four Hundred Thousand Dollars ($2,400,000.00).

26.     Pursuant to Section 2(b) of the Agreement, the membership interest was to accrue on a schedule pegged to the "Gross Profits" generated by the Assigned Contracts.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

5

27.     Specifically, the parties agreed that RCCI would earn: a 5% interest for the first $800,000.00 in Gross Profits generated; a 5% interest for the second $800,000.00 in Gross Profits generated; and the remaining 15% interest for the last $800,000.00 in Gross Profits generated by the Assigned Contracts.

28.     The parties to the MIPA recognized the possibility of a termination of the agreement before a full vesting of rights, and included a provision for "Incomplete Vesting" whereby RCCI was to receive a membership interest in TLM and TLM MCL that was proportionate to the gross profits received through date of termination, in the event the MIPA was terminated prior to full vesting.

29.     According to Section 2(b)(iv) of the Agreement, TLM was required to "deliver to RCCI a quarterly statement summarizing the progress toward vesting."

30.     Pursuant to Section 8(d), TLM agreed that "when Interests in TLM are issued to RCCI pursuant to this Agreement, TLM and [its members] shall take action as is necessary to cause corresponding ownership interests (i.e., in the same ownership percentages) in…any other entities formed by TLM or [its members] in connection with the business of TLM to be issued to RCCI."

31.     TLM MCL is an entity organized and operated by Carron, Dunkley and Osborn for the purpose of performing work and conducting business in Ireland and elsewhere in Europe, and thus falls squarely within the parameters of Section 8(d) of the Agreement since that entity was used to perform a large portion of the Assigned Contracts.

32.     Section 3 of the MIPA provides for additional compensation to RCCI during the Vesting Period.  For instance, in exchange for RCCI's delivery of the Assigned Contracts

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

to TLM, it was agreed that RCCI would receive a monthly retainer of Thirty Thousand Dollars ($30,000.00) from TLM (the "Monthly Retainer").

33. The parties also agreed that the Net Profits from the Assigned Contracts (as defined in Section 1(g) of the MIPA) would be distributed as follows: 45% to TLM and the remaining 55% to RCCI.

34. In accordance with the MIPA, this calculation of Net Profits "shall be made by the twentieth (20th) day of each month for the preceding month, and any payments due to RCCI shall be made by the final day of that month."

B. **Defendants Breach the Agreement and Subsequently Refuse to Honor Their Obligations Upon Termination.**

35. As of and subsequent to the Effective Date of the MIPA, RCCI performed all of its required obligations under the MIPA.

36. Once the MIPA was fully executed, RCCI took all necessary steps to deliver the Assigned Contracts to TLM and/or TLM MCL and, in fact, those entities have been performing the Assigned Contracts and receiving substantial payments in connection with said contracts.

37. From in or about July 2015 to September 2015, the money being generated from the Assigned Contracts was flowing primarily to RCCI because of the time needed for the clients to make the necessary internal adjustments to their accounting systems to integrate TLM and/or TLM MCL as the billing vendor.

38. Upon receipt of the revenue, RCCI, working with TLM, performed the necessary accounting reconciliation and issued TLM its 45% of the Net Profits for the months of July 2015 and August 2015.

LAW OFFICES

Peckar & Abramson

A Professional Corporation

7

39. In or around September 2015, Carron and TLM's Chief Financial officer, Frank Garvey ("Garvey"), approached RCCI during a meeting at TLM's New York office about including a 5% overhead expense in the Gross Profits calculation associated with TLM's alleged "back office" time spent providing accounting on the various projects.

40. Carron and Garvey described this 5% "overhead expense" as time spent by TLM's members providing accounting and overhead support on the various projects assigned to it by RCCI. This did not include any time spent performing work directly on any of the projects.

41. As defined within Section 1(e) of the MIPA, "Gross Profit" is the "revenue received by TLM [and/or TLM MCL] from the [Assigned] Contracts during the Vesting Period" less the amount paid for narrowly defined expenses related to the direct performance of the work on the project.

42. The "Net Profit" is defined within Section 1(g) of the MIPA as the Gross Profit less RCCI's Monthly Retainer.

43. Since the MIPA clearly did not allow TLM to bill for "back office" expenses or time spent by existing TLM members or employees on work not directly related to the work on the various projects, RCCI objected to the inclusion of this expense in the Gross Profits calculation. Carron and TLM then agreed that the 5% overhead expense would not be included in the Gross Profits calculation. RCCI subsequently paid the agreed amounts for the months of July 2015 and August 2015, excluding any overhead expenses.

44. By October 2015, all of the money being generated from the Assigned Contracts was flowing directly to TLM and/or TLM MCL.

45. However, Defendants failed to provide the monthly reconciliations required by the MIPA and did not furnish a single reconciliation until February 2016, at which time they delivered to RCCI what purported to be a reconciliation for the period of July 2015 to December 2015.

46. This reconciliation was handed to RCCI at the conclusion of a meeting between the parties at TLM's New York office in February 2016.

47. When RCCI later examined the February 2016 reconciliation, it realized that TLM had unilaterally charged overhead expense for Carron's time along with charging time for Garvey and other office overhead personnel not directly involved in the performance of the work on the various projects. The charges were for time communicating with RCCI, processing billings to the client and processing expenses for the employees. The charges amounted to approximately $101,000.00, in order to shift expenses from TLM existing overhead and decrease the Net Profits realized by RCCI. By unilaterally increasing the amount of TLM's overhead expenses associated with each contract in direct contravention of the MIPA, Defendants were improperly increasing their own share of profits received from the Assigned Contracts. This also included a recalculation for the months of July 2015 and August 2015 already paid by RCCI.

48. Additionally, as stated above, Section 3 of the MIPA obligated TLM to pay RCCI a Monthly Retainer of $30,000, and to also reimburse RCCI for non-client related business expenses (such as conferences and related travel costs). Despite these clear provisions, TLM failed and refused to pay RCCI's retainer for a number of months in the spring of 2016 and failed and refused to reimburse RCCI for valid expenses, despite request.

49. By February 2016, under the express terms of the MIPA, RCCI had obtained a member interest in TLM and TLM MCL by operation of the agreement, and thus the members of TLM and TLM MCL (Carron, Dunkley and Osborn) each owed fiduciary duties to RCCI.

50. Due to Defendants' blatant breaches of contract and of their fiduciary duties to RCCI, RCCI exercised its contractual right to terminate the MIPA on April 14, 2016, by letter to TLM in accordance with the notice provisions of the agreement.

51. Section 5(a) of the MIPA provides:

> "If a Permitted Termination of this Agreement occurs, then TLM shall pay RCCI a breakup fee (the "<u>Breakup Fee</u>") as provided in this Section 5. As used in this Section 5, "<u>Permitted Termination</u>" means a termination by RCCI prior to the end of Vesting Period, or a termination of this Agreement by TLM for any reason other than for Cause prior to the end of the Vesting Period. If TLM terminates this Agreement for Cause, then no Breakup Fee shall be due. As used in this Section 5, "<u>Cause</u>" means a material breach of this Agreement by RCCI that is not cured within thirty (30) days of written notice of the breach from TLM to RCCI."

52. Section 5(f) of the MIPA provides:

> "If the Breakup Fee is due to RCCI pursuant to this Section 5, or this Agreement is terminated by TLM for Cause, then [RCCI's] Interest will be repurchased by TLM according to the terms of TLM's operating agreement."

53. Section 6(a) of the MIPA permits either party to terminate the Agreement "for any reason prior to the end of the Vesting Period by giving the other party at least sixty (60) days' prior written notice."

54. In accordance with its rights under the MIPA, RCCI set a "Termination Date" of June 15, 2016, and demanded that: (1) TLM pay to RCCI the Breakup Fee, which RCCI calculated as totaling $1,456,249.00; (2) repurchase RCCI's Interest in TLM and TLM MCL,

then estimated to be between 5-10%, and now estimated to be between 10-15%; (3) reimburse RCCI for various expenses advanced on TLM's behalf, which total $37,133.32 and €146,954.09; and (4) pay two Monthly Retainer payments in the total amount of $60,000.

55.     RCCI also demanded an accounting from Defendants of its then vested membership interest in TLM and TLM MCL.

56.     Defendants responded through counsel by unlawfully terminating the MIPA, purportedly "for cause" and effective immediately despite clear terms of the MIPA prohibiting any such termination.  Defendants also denied any obligation to: (1) pay RCCI the Breakup Fee; (2) repurchase RCCI's membership interest in TLM or TLM MCL; (3) reimburse RCCI the various expenses it fronted for TLM and TLM MCL; and (4) pay the two Monthly Retainer payments in the total amount of $60,000.

57.     Although the MIPA prohibits a termination "for cause" without at least 60 days' advanced written notice, Defendants blatantly ignored such provision.

58.     Defendants also blatantly ignored their obligation under Section 5 of the MIPA to give RCCI 30 days' opportunity to cure any alleged material breach of the MIPA by failing to give advance notice, and failing to give any valid explanation for the invalid termination.  This letter constitutes a wrongful termination of the MIPA.

59.      Further, despite repeated requests for an accounting of RCCI's vested membership interest in TLM and TLM MCL, Defendants have refused to provide same to RCCI.  They have also repeatedly failed to provide monthly financial reports to RCCI as specifically required in the MIPA, which is a further breach of the agreement.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

11

60. Not only have Defendants failed and refused to honor their contractual and legal obligations and continuing fiduciary duties to RCCI, but they have also continued to possess and enjoy the fruits of the Assigned Contracts as they are now diverting all income from same to themselves.

## COUNT ONE
### (Specific Performance)

61. RCCI repeats and realleges each and every allegation set forth in paragraphs 1 through 60 as if fully set forth at length herein.

62. RCCI validly terminated the MIPA and thereby triggered the Breakup Fee provision of said agreement when it gave notice of termination on April 14, 2016.

63. Defendants' subsequent letter dated April 20, 2016 was and is a legal nullity since: it was sent after the MIPA termination process had already been triggered by RCCI; it failed to give advance notice and an opportunity to cure; and it failed to articulate any legal basis for a "Cause" termination.

64. RCCI's termination triggered a "Permitted Termination" within the meaning of the MIPA, requiring TLM and TLM MCL to pay a Breakup Fee to RCCI, and to repurchase RCCI's Interest in TLM and TLM MCL in accordance with the terms of TLM's operating agreement.

65. Further, TLM and TLM MCL are obligated to reimburse RCCI for the expenses it advanced on Defendants' behalf.

66. In accordance with Section 3(a) of the MIPA, TLM and TLM MCL are obligated to continue to pay RCCI the agreed upon Monthly Retainer through the Termination Date, June 15, 2016.

67. RCCI has duly performed all of its obligations under the MIPA.

68. Defendants wrongfully and improperly refused to perform in accordance with the MIPA, in breach of RCCI's rights thereunder and in breach of fiduciary duties owed by Defendants Carron, Dunkley and Osborn, thereby damaging RCCI.

69. Defendants should be directed to: (1) pay RCCI the Breakup Fee of $1,456,249.00; (2) repurchase RCCI's Interest in TLM and TLM MCL after RCCI is provided with a full accounting of such membership interest; (3) reimburse RCCI for various expenses advanced in generating additional business on TLM's and/or TLM MCL's behalf, which total $37,133.32 and €146,954.09; and (4) pay RCI the Monthly Retainer payments owed to it.

70. RCCI has no adequate remedy at law.

## COUNT TWO
(**Breach of Contract**)

71. RCCI repeats and realleges each and every allegation set forth in paragraphs 1 through 70 as if fully set forth at length herein.

72. The MIPA constitutes a written contract between RCCI and Defendants, with each of them agreeing to be bound by its terms and to perform thereunder.

73. RCCI validly terminated the MIPA by way of its April 14, 2016 notice, which notice was ignored by Defendants.

74. Defendants' failure to acknowledge the validity of RCCI's termination of the MIPA constitutes a breach of contract.

75. As a result of Defendants' unlawful actions, RCCI has been damaged.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

13

## COUNT THREE
### (Breach of Contract)

76.     RCCI repeats and realleges each and every allegation set forth in paragraphs 1 through 75 as if fully set forth at length herein.

77.     The MIPA constitutes a written contract between RCCI and Defendants, with each of them agreeing to be bound by its terms and to perform thereunder.

78.     The actions by Defendants set forth above constitute a wrongful termination and breach of the MPIA by Defendants.

79.     Specifically, Defendants have breached by the Agreement by, *inter alia*:

(a)     Refusing to pay RCCI the Breakup Fee of $1,456,249.00;

(b)     Refusing to provide RCCI an accounting of its Interest in TLM and TLM MCL;

(c)     Refusing to repurchase RCCI's Interest in TLM and TLM MCL, now estimated to be between 10-15%;

(d)     Refusing to reimburse RCCI for various expenses advanced on TLM's and TLM MCL's behalf, which total $$37,133.32 and €146,954.09;

(e)     Refusing to pay Monthly Retainer payments due and owing to RCCI;

(f)     Failing to provide monthly financial reports as required by Section 10(a)(v) of the MPIA;

(g)     Failing to provide monthly Net Profit payments to RCCI as required by Section 3(b) of the MPIA;

(h)     Failing to provide quarterly vesting statements to RCCI as required by Section 2(b)(iv) of the MPIA;

(i)     Refusing to grant RCCI access to TLM's and TLM MCL's records and personnel as required by Section 10(b) of the MPIA;

(j)     Failing to update its operating agreement by December 31, 2015, as required by Section 11 of the MPIA; and

(k)     Failing to afford RCCI the right to cure any alleged material breach under Section 5 of the MPIA.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

80. As a result of Defendants' unlawful actions, RCCI has been damaged.

## COUNT FOUR
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

81. RCCI repeats and realleges each and every allegation set forth in paragraphs 1 through 80 as if fully set forth at length herein.

82. The MIPA contains an implied covenant of good faith and fair dealing.

83. As more fully described above, Defendants have acted in a manner intended to deprive RCCI of its rights to the benefits it bargained for under the MIPA, through unlawful means.

84. As more fully described above, Defendants operated at all relevant times with the secret intention of accepting the Assigned Contracts only to abscond with said contracts without ever recognizing that RCCI had a valid Interest in TLM or TLM MCL or paying RCCI any Breakup Fee.

85. Defendants' scheme to loot RCCI of its profitable contracts without giving RCCI anything in return directly deprives RCCI of the benefits it bargained for under the MIPA.

86. As a result of the foregoing, Defendants will continue to enjoy the revenue generated from the Assigned Contracts without having performed their obligations under the MIPA and without having given anything to RCCI in exchange.

87. Defendants have thus breached the MIPA and the implied covenant of good faith and fair dealing.

88. As a result of Defendants' breaches of the implied covenant of good faith and fair dealing, RCCI has been damaged.

**COUNT FIVE**
(**Breach of Fiduciary Duties**)

89. RCCI repeats and realleges each and every allegation set forth in paragraphs 1 through 88 as if fully set forth at length herein.

90. As fellow members of TLM and TLM MCL with RCCI, Defendants Carron, Dunkley and Osborn owed and continue to owe common law and statutory duties of fidelity and loyalty to RCCI: (1) not to use company assets for their own private benefit or to ignore their fiduciary duties in handling RCCI's funds; (2) not to divert funds from the Company to themselves or to make adjustments to the books and records of TLM to inflate expenses on the Assigned Contracts so as to reduce income to RCCI; and (3) not to deprive RCCI of information concerning the ongoing affairs of TLM, TLM MCL and/or the Assigned Contracts, which information has been controlled by Defendants.

91. The obligations of Defendants, as aforesaid, continue to this date.

92. By virtue of the actions described above, Defendants Carron, Dunkley and Osborn have breached, and continue to breach, these common law duties.

93. As a result of Defendants' breaches of their common law fiduciary duties and responsibilities to RCCI, RCCI has suffered damages, for which all Defendants are jointly and severally liable, including but not limited to compensatory and punitive damages, interest, attorneys' fees, and costs of suit.

**WHEREFORE**, RCCI prays that judgment be entered in its favor and against Defendants for relief as follows:

(a) Compensatory damages in an amount to be determined at trial;

(b) Punitive damages in an amount to be determined at trial;

(c) Payment of attorneys' fees and costs;

(d) Pre- and post-judgment interest as allowed by law; and

(e) All other and further relief, at law or in equity, as this Court may deem just and proper.

## JURY DEMAND

RCCI demands a trial by jury on all issues so triable.

Dated: New York, New York
May 20, 2016

**PECKAR & ABRAMSON, P.C.**

By: */s/ Kevin J. O'Connor*
KEVIN J. O'CONNOR (KO-3825)
Attorneys for Plaintiff
Rennaker Company Consulting, Inc.,
41 Madison Avenue, 20th Floor
New York, New York 10036
(212) 382-0909
LAW OFFICES
Peckar & Abramson
A Professional Corporation